UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN A. JONES, on behalf of himself and others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| - against - | ) ) ) |
| STERLING INFOSYSTEMS, INC., | ) ) ) |
| Defendant. | ) ) ) ) ) |

C.A. No. 14-CV-03076 (VEC)

**DEFENDANT STERLING INFOSYSTEMS, INC.'S ANSWER AND DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Sterling Infosystems, Inc. ("Sterling") answers Plaintiffs' Class

Action Complaint ("Complaint") and asserts its defenses as follows:

## [NATURE OF THE ACTION]

1.      This is a consumer class action against Defendant Sterling
Infosystems, Inc. (hereafter "Sterling or Defendant"), one of the largest consumer
reporting agencies in the United States, based upon Sterling's widespread and
systemic non-compliance with both the federal Fair Credit Reporting Act, 15 U.S.C.
§§ 1681 *et seq*. ("FCRA") and the New York Fair Credit Reporting Act, N.Y. Gen.
Bus. Law § *et seq*. ("NY-FCRA").

**ANSWER:  Sterling admits that this lawsuit is a putative class action**

**asserting claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 <u>et</u>**

**<u>seq</u>. ("FCRA") and the New York Fair Credit Reporting Act, N.Y. Gen. Bus.**

**Law § 380 <u>et seq</u>. ("NY FCRA"), and further admits that it is a "consumer**

**reporting agency" as that term is defined in Section 1681a(f) of the FCRA**

**and Section 380-a(e) of the NY FCRA.  Sterling denies the remaining**

**allegations in this paragraph.**

2.     Class Representative, Kevin Jones, lost an employment opportunity because a background check prepared by Sterling unlawfully reported four criminal records that belonged to a different Kevin Jones. Mr. Jones has no criminal record. This class action complaint charges Sterling with systematically failing to use reasonable procedures to ensure that the public record information that Sterling reports to employers or prospective employers is complete and up to date. Had such procedures, such as inspecting the actual public records, been used with regard to Class Representative Kevin Jones, it would have been clear that the criminal record history that Sterling reported belonged to a different Kevin Jones. The complaint also charges Sterling with systematically failing to provide two legally required notices that can help individuals like Mr. Jones ensure the accuracy of their reports and otherwise protect their rights. In particular, Sterling fails to provide employees and applicants with a required contemporaneous notice that it is giving adverse information about them to employers (and potential employers). Sterling also fails to provide notice about the right to request a description of the procedure Sterling uses to determine the accuracy and completeness of the information reported. Finally, the class action complaint charges that when individuals request information in their consumer files, Sterling yet again fails to include legally required information — information that may have assisted Mr. Jones determine the source of the inaccurate data.

**ANSWER:  Sterling admits that the third, fifth and eighth sentences of this paragraph purport to summarize the "charges" made by Plaintiff in the Complaint, but denies that it is liable to Plaintiff or the putative classes for any such "charges."  Sterling denies the allegation in the first sentence that it "unlawfully reported four criminal records," and further denies the allegations in the sixth and seventh sentences of this paragraph.  Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

3.     Sterling's unlawful business practices not only harmed Mr. Jones but also harmed and continue to harm hundreds, if not thousands, of consumers in New York and throughout the country, including individuals with criminal record histories. Furthermore, Sterling's unlawful business practices are precisely the types of practices that the FCRA was enacted to prevent. The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4), by operating "in a manner which is fair and equitable to the consumer,

with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate. 15 U.S.C. § 1681(b). Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports." The NY-FCRA was modeled after the FCRA in many respects although it contains several distinct provisions and duties. Sterling has thwarted the legislative purpose of the FCRA and NY-FCRA by engaging in unlawful practices that appear to place its business interests above the rights of consumers.

**ANSWER: Sterling denies the allegations in the first, second and sixth text sentences of this paragraph. Sterling admits that the third sentence of this paragraph accurately quotes in part from 15 U.S.C. §§ 1681(a)(4) and 1681(b), but denies that this paragraph completely or accurately quotes all of the language in those subsections. Sterling admits the allegation in the fourth sentence of this paragraph that the FCRA imposes certain duties on "users" of consumer reports, but denies that this paragraph completely or accurately describes the FCRA's mandates as to "users" of consumer reports. Sterling admits the allegations in the fifth sentence of this paragraph. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

## [PARTIES ]

4. Plaintiff is an adult individual residing in New York, New York.

**ANSWER: Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

5. Defendant Sterling Infosystems, Inc. is a business entity that regularly conducts business in New York, and has a principal place of business located at 1 State Street Plaza, 24th Floor, New York, New York 10004. According to its website, "Sterling Infosystems is the world's largest company focused entirely on background checks." http://www.sterlinginfosystems.com/about-sterling.htm.

**ANSWER:  Sterling admits the allegations in the first sentence of this paragraph.  Sterling admits that, as of August 4, 2014, its website (http://www.sterlingbackcheck.com/About/Company-Profile.aspx) states that "SterlingBackcheck is the world's largest company focused entirely on background checks," but denies that the second sentence of this paragraph completely or accurately quotes all of the language from that website.**

## [JURISDICTION AND VENUE]

6.      This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

**ANSWER:  Sterling admits that this Court has federal question jurisdiction over Plaintiff's FCRA claims under 15 U.S.C. § 1681p.  Sterling denies the remaining allegations in this paragraph.**

7.      Venue lies properly in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District, and because Defendant "resides" in this District as defined in 28 U.S.C. § 1391(c).

**ANSWER:  Sterling denies that it is liable to Plaintiff or the putative classes, but admits that venue is proper in this District.**

## [STATEMENT OF FACTS]

### [Background: Sterling's Operations and Activities]

8.      Sterling is one of the largest of the nation's employment background screening companies. Such companies are "consumer reporting agencies" (CRAs) that provide "consumer reports," as those terms are defined by 15 U.S.C. §§ 1681a(f) and 1681a(d)(1)(B), to prospective employers and employers.

**ANSWER: To the extent that the allegations in this paragraph relate to Sterling, Sterling admits the allegations in the first sentence of this paragraph. Sterling further admits that it is a "consumer reporting agency" as that term is defined in Section 1681a(f) of the FCRA, and that certain of its communications with employers and prospective employers constitute "consumer reports" as that term is defined in Section 1681a(d)(1)(B) of the FCRA. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

9.      To carry out its business activities and objectives, Sterling enters into contracts with various vendors and companies which sell Sterling a whole host of consumer information that Sterling then in turn resells to employers who are seeking to hire or make other employment decisions. Such vendors include public records vendors as well as other CRAs, such as Trans Union and LexisNexis.

**ANSWER: Sterling admits generally that it obtains certain information from vendors and companies with whom Sterling has contractual relationships, and that entities sometimes referred to as "Trans Union" and "LexisNexis" are two such entities. Sterling also admits that, in certain circumstances, it provides consumer reports for employment purposes to employers and prospective employers. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

10.      The typical information that Sterling gathers, and assembles for resale to an employer in connection with a background check, includes credit report history, national criminal database data, state and local criminal records, driver's history, and residential/address history associated with social security number and date of birth. Sterling assembles such data and delivers it to an employer

electronically, usually through a login portal or interface. In addition to the raw data, Sterling often additionally provides a "rating" of such information based upon criteria previously supplied by the employer, and sends the consumer adverse action notification on behalf of an employer customer when the data fails to meet the employer's criteria.

**ANSWER: Sterling admits generally that among the items of information it gathers and sometimes includes on certain, but not all, consumer reports furnished for employment purposes are one or more of the following: "credit report history, national criminal database data, state and local criminal records, driver's history, and residential/address history associated with social security number and date of birth." Sterling admits generally that it delivers certain consumer reports furnished for employment purposes electronically using "a login portal or interface." Sterling further admits that, for certain customers, Sterling sends pre-adverse action notices at the direction of an employer or prospective employer who intends to take "adverse action" against a consumer. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

11.    A criminal record can be the most significant component of a background check and can often negatively impact a consumer's application for employment or a consumer's employment. As a result, both the FCRA and the NY-FCRA contain specific provisions that impose duties of special care that CRAs must take when reporting public records in connection with employment. 15 U.S.C. § 1681k(a); N.Y. Gen. Bus. Law § 380-g.

**ANSWER: Sterling admits that the cited sections of the FCRA and NY FCRA impose on consumer reporting agencies certain requirements relating to items of public record information in certain consumer reports,**

**but denies that this paragraph completely or accurately describes the FCRA's or NY FCRA's mandates. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

12. Both the FCRA and NY-FCRA require that, in connection with the reporting of a public record, unless the public records reported by the CRA are complete and up to date, it must provide the consumer with a specific notification "at the time" it provides the record to an employer. 15 U.S.C. § 1681k(a); N.Y. Gen. Bus. Law § 380-g. This duty is in addition to the usual duty to follow reasonable procedures to assure "maximum possible accuracy" imposed by both laws. 15 U.S.C. § 1681e(b); N.Y. Gen. Bus. Law § 380-j(e).

**ANSWER: Sterling admits that the cited sections of the FCRA and NY FCRA impose certain requirements on consumer reporting agencies, but denies that this paragraph completely or accurately describes the FCRA's or NY FCRA's mandates. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

13. Sterling represents to its employer customers, to consumers who request copies of their background checks and to the general public that the criminal records it sells are complete, up to date and accurate. Sterling represents in its background check reports that the criminal information it reports matches "exactly" the information reported by local courts, and that it only reports criminal information when there is an "exact match between the full name and date of birth provided by the subject and the court record." Sterling also represents to the public that its reports provide "unbeatable speed and accuracy." http://www.sterlinginfosystems.com.

**ANSWER: Sterling admits that certain consumer reports it has prepared include the language quoted in the second sentence of this paragraph, but denies that the allegations of this paragraph accurately or completely describe any representations made by Sterling in consumer**

**reports. Sterling denies that the language quoted in the third sentence of this paragraph is currently contained on the indicated website. Sterling denies the remaining allegations in this paragraph.**

14. These representations are grossly and recklessly false. Sterling's representatives have acknowledged under oath in other litigation that Sterling does not actually get the full and complete actual public record prior to selling a background check. In addition, as demonstrated more fully below, Sterling's reports are often riddled with damaging errors that misattribute the criminal history of other individuals on a job applicant's or employee's background report. Sterling's reports contain such errors because Sterling obtains incomplete, inaccurate and truncated criminal record data, uses poor matching criteria and logic, and has inadequate report preparation procedures which fall far below the "maximum possible accuracy" standards required by the FCRA and NY-FCRA.

**ANSWER: Sterling denies the allegations in this paragraph.**

15. As a result of Sterling's failure to obtain and report public records that are complete and up to date, it is required to provide consumers with FCRA specified notification at the time it provides a consumer report to an employer, which it fails to do pursuant to corporate policy.

**ANSWER: Sterling denies the allegations in this paragraph.**

16. Sterling's non-compliance with the FCRA extends beyond the point of sale of a background check. When consumers request their files from Sterling, Sterling fails to provide them with all of the information required by the FCRA and NY-FCRA.

**ANSWER: Sterling denies the allegations in this paragraph.**

**[The Facts Pertaining to Class Representative Plaintiff Kevin A. Jones ]**

17. Plaintiff Kevin A. Jones applied for employment with Halstead Management Company, LLC ("Halstead") as a doorman/porter on or about July 12, 2012. On that morning, Mr. Jones was interviewed by a senior management executive at Halstead who, following the interview, offered Mr. Jones the job, which Mr. Jones accepted.

**ANSWER: Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

18.     Later in the day, and pursuant to Halstead's policy, Mr. Jones filled out a written application. In filling out the application, Mr. Jones truthfully answered the question whether he had ever been convicted of a crime in the negative. He also completed a drug test.

**ANSWER:  Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

19.     Pursuant to its contractual relationship with Sterling, Halstead or a related company, Brown Harris Stevens LLC Group ("BHSG"), then ordered an employee background check on Mr. Jones from Sterling.

**ANSWER:  Sterling admits that, on or about July 12, 2012, pursuant to a contractual relationship, Halstead Management Company, LLC and Brown Harris Stevens Residential Management, LLC (collectively, "Halstead/BHS"), ordered a background screening report on an individual identified as "Kevin Jones."  Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

20.     In response to Halstead's or BHSG's request, on or around July 13, 2012, Sterling sold them an employment consumer report pertaining to Mr. Jones that contained approximately 25 pages of information, including information about Mr. Jones's credit history, his residential and address history, and four grossly inaccurate and stigmatizing criminal records. The Sterling employment report violated the FCRA and NY-FCRA in numerous respects as set forth below.

**ANSWER:  Sterling admits that, on or about July 13, 2012, it furnished to Halstead/BHS a consumer report for employment purposes relating to an individual identified as "Kevin Jones" ("the "Report").  Sterling admits that the Report, if printed, "contained approximately 25 pages of information," depending on if and how it was printed.  Sterling admits that the Report contained items of information relating to credit**

history information, criminal history information and residential and address history information. Sterling denies the remaining allegations in this paragraph.

21.     The four inaccurate criminal records contained in the Sterling employment report belonged to another individual, as Mr. Jones had no conviction records of any kind. As explained in more detail below, the sole reason the four inaccurate criminal records were reported as belonging to Mr. Jones was that Sterling failed to use reasonable procedures to assure the maximum possible accuracy in preparing the Sterling employment report, and failed to obtain the complete and up to date public records at issue prior to issuing the report. Had Sterling followed such duties, it would have discovered that such records did not belong to Mr. Jones and it would not have reported them to his prospective employer.

**ANSWER: Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph. Sterling denies the allegations in the second and third sentences of this paragraph, as well as any remaining allegations in this paragraph.**

22.     The first inaccurate criminal record reported a conviction for "OPERATING MOTOR VEHICLE UNDER INFLUENCE DRUG OR ALCOHOL (M)" and reported 3 other charges. The Sterling employment report falsely stated that the "Name On Court File" was "Kevin Jones," when in fact the actual court record states clearly that the defendant in the case was "Kevin M. Jones." In addition, the Sterling employment report also omitted the source and name of the court that issued the record, which was the Orchard Park Town Justice Court.

**ANSWER: Sterling admits that: the Report included a record relating to "OPERATING MOTOR VEHICLE UNDER INFLUENCE DRUG OR ALCOHOL (M)" and three other charges; this record included the text "Name on Court File: KEVIN JONES"; and, this record did not include the words "Orchard Park Town Justice Court." Sterling denies that this**

**paragraph accurately or completely quotes or describes the Report's contents relating to this record or the information obtained from the court record. Sterling denies any allegations inconsistent with the complete content of the Report, as well as any remaining allegations in this paragraph.**

23. The second inaccurate criminal record reported a criminal conviction for "ATTEMPTED PETIT LARCENY (M)" and criminal charges for "ATTEMPTED PETIT LARCENY (M)" and "PETIT LARCENY (M)." The Sterling employment report falsely stated that the "Name on Court File" was "Kevin Jones," when in fact the actual court record states clearly that the defendant in the case was "Kevin M. Jones." In addition, the Sterling employment report again also omitted the source and name of the court that issued the record, which was the West Seneca Town Court, Criminal Part.

**ANSWER: Sterling admits that: the Report included a record relating to "ATTEMPTED PETIT LARCENY (M)" and "PETIT LARCENY (M)"; this record included the text "Name on Court File: KEVIN JONES"; and, this record did not include the words "West Seneca Town Court, Criminal Part." Sterling denies that this paragraph accurately or completely quotes or describes the Report's contents relating to this record or the information obtained from the court record. Sterling denies any allegations inconsistent with the complete content of the Report, as well as any remaining allegations in this paragraph.**

24. The third inaccurate criminal record reported three felony charges of "1ST DEGREE-AGGRAVATED UNLICENSED OPERATION MOTOR VEHICLE (F)"; "OPERATING MOTOR VEHICLE UNDER INFLUENCE DRUG OR ALCOHOL (F)"; "OPERATING MOTOR VEHICLE UNDER INFLUENCE DRUG OR ALCOHOL (F);" and violations of probation for the first two charges. The Sterling employment report again falsely stated that the "Name on Court File" was "Kevin Jones," when in fact the actual court record states clearly that the defendant in the case was "Kevin M. Jones." In addition, the actual court record included the

defendant's street address in West Seneca, NY, as well as the defendant's race, which was WHITE.

**ANSWER:  Sterling admits that: the Report included a record relating to "1ST DEGREE-AGGRAVATED UNLICENSED OPERATION MOTOR VEHICLE (F)," "OPERATING MOTOR VEHICLE UNDER INFLUENCE DRUG OR ALCOHOL (F)" and "OPERATING MOTOR VEHICLE UNDER INFLUENCE DRUG OR ALCOHOL (F)"; and, this record included the text "Name on Court File: KEVIN JONES."  Sterling denies that this paragraph accurately or completely quotes or describes the Report's contents relating to this record or the information obtained from the court record.  Sterling denies any allegations inconsistent with the complete content of the Report, as well as any remaining allegations in this paragraph.**

25.    The fourth inaccurate criminal record reported a criminal conviction for "3RD DEGREE-ATTEMPTED FORGERY (M)" as well as criminal charges of "2ND DEGREE-FORGERY (F)" and "5TH DEGREE-CRIMINAL POSSESSION OF STOLEN PROPERTY (M)." The Sterling employment report again falsely stated that the "Name on Court File" was "Kevin Jones," when in fact the actual court record states clearly that the defendant in the case was "Kevin M. Jones." In addition, the actual court record included the defendant's street address in Lancaster Town, NY as well as the defendant's middle name of "MORGAN." Finally, the Sterling employment report omitted the source and name of the court that issued the record, which was the "LANCASTER VILLAGE COURT, CRIMINAL PART."

**ANSWER:  Sterling admits that: the Report included a record relating to "3RD DEGREE-ATTEMPTED FORGERY (M)," "2ND DEGREE-FORGERY (F)" and "5TH DEGREE-CRIMINAL POSSESSION OF STOLEN PROPERTY (M)"; this record included the text "Name on Court File:**

KEVIN JONES"; and, this record did not include the words "LANCASTER VILLAGE COURT, CRIMINAL PART." Sterling denies that this paragraph accurately or completely quotes or describes the Report's contents relating to this record or the information obtained from the court record. Sterling denies any allegations inconsistent with the complete content of the Report, as well as any remaining allegations in this paragraph.

26.     Any routine reference to, casual consideration of or rudimentary inspection of the actual public records referenced in the Sterling employment report by a reasonable person or company would have revealed that the records did not belong to Mr. Jones. Any simple computer programmed or automated cross-referencing procedure of the actual court data with the personal identifying information of Mr. Jones would have also raised significant caution that the information Sterling reported to Halstead and/or BHSG was inaccurate. For each record, the actual public record pertained to a "Kevin M. Jones," when Mr. Jones has always held the middle name of Alexander and used the middle initial "A." Two of the court records referenced the actual defendant's addresses, neither of which Mr. Jones had ever resided at. Finally, one of the actual public records demonstrated that the actual defendant's middle name was Morgan, not Alexander.

**ANSWER: Sterling denies the allegations in the first and second sentences of this paragraph. Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

27.     Defendant was or should have been aware of these patent discrepancies through the name and address information it had obtained about Mr. Jones from the Trans Union credit reporting agency and the residential address history it had obtained from LexisNexis' Accurint database. That information plainly and consistently demonstrated that Mr. Jones had never gone by the middle initial of "M" or the middle name of Morgan, and had never resided at the West Seneca, New York and Lancaster Town, New York addresses listed in the court records. Notwithstanding its possession of such contradictory and useful information, Defendant simply disregarded it and reported the inaccurate criminal history to Halstead and/or BHSG pursuant to its usual policies and practices.

**ANSWER: Sterling denies the allegations in this paragraph.**

28.     In addition to recklessly reporting the inaccurate criminal history about Mr. Jones to Halstead and/or BHSG, Sterling knowingly and intentionally communicated the following false statements:

> **THE CRIMINAL INFORMATION REPORTED IN THIS REPORT APPEARS EXACTLY AS IT IS RECEIVED FROM THE LOCAL JURISDICTIONS AND MAY CONTAIN INFORMATION THAT MAY BE PROHIBITED FOR USE IN MAKING HIRING DECISIONS; and**
>
> **Results pertaining to the subject's potential criminal background results are only included in the report *if there is an exact match between the full name and date of birth provided by the subject and the court record.***

(Emphasis added).

**ANSWER:  Sterling admits that the Report included the language quoted in this paragraph, but denies that this paragraph accurately or completely quotes all of the language in the Report.  Sterling denies the remaining allegations in this paragraph.**

29.     Such identical language appeared in the thousands of Sterling reports sold throughout the country during the class period and is uniformly false when Sterling does not retrieve and communicate the complete and actual full public record.

**ANSWER:  Sterling denies the allegations in this paragraph.**

30.     On or about July 16, 2012, a representative from Halstead named Meredith telephoned Mr. Jones and left a message. When Mr. Jones returned the call, Meredith informed him that the background check was not clean and contained criminal history information. When Mr. Jones informed Meredith that the negative information was inaccurate, she instructed him to dispute the information with Sterling.

**ANSWER:  Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

31.    On the same day, and without yet having a copy of the actual report, Mr. Jones called Sterling to dispute what Meredith had told him and spoke with a "Reena." She informed him that criminal history information from New York State appeared on his background check. Mr. Jones said the information was incorrect, and told her about a situation when he had been the victim of mistaken identity in Florida years before where he had to submit a "not me" affidavit which resolved the issue. Reena instructed Mr. Jones to fax the affidavit to her attention at Sterling.

**ANSWER:  Sterling admits that on July 16, 2012, a then-employee of Sterling, Reena Dennson, spoke with an individual who disputed information included in the Report.  Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

32.    On July 17, 2012, Mr. Jones faxed the "not me" affidavit to Sterling.

**ANSWER:  Sterling admits that on July 17, 2012, it received a four-page facsimile transmission from an individual who identified himself as "Kevin A. Jones," and that one page of that transmission was an affidavit. Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

33.    On the same date, Sterling sent Mr. Jones a letter deceptively represented to be a "Pre-Adverse Action Notice" sent by Halstead, containing Sterling's address and other contact information, which informed him that "we have decided to revoke your conditional offer of employment" based on a "Criminal Report" provided by Sterling, and which enclosed a copy of a July 17, 2012 Sterling Testing Systems Report (the "July 17, 2012 Sterling Report"). The July 17, 2012 Sterling Report contained the information within the Sterling employment report, including the four inaccurate criminal records.

**ANSWER:  Sterling admits that on July 17, 2012, on behalf of Halstead/BHS, it sent an individual identified as "Kevin Jones" a "Pre-**

Adverse Action Notice" and a copy of the Report.  Sterling admits that the

"Pre-Adverse Action Notice" stated, in part:

> Criminal Report
>
> Based on this information, subject to your successfully challenging the accuracy of this information, we have decided to revoke your conditional offer of employment.

Sterling denies that this paragraph accurately or completely quotes all of

the language in the "Pre-Adverse Action Notice."  Sterling denies the

characterizing allegations "deceptively" and "inaccurate."  Sterling lacks

knowledge or information sufficient to form a belief as to the truth of any

remaining allegations in this paragraph.

34.    As a result, Sterling, Halstead and BHSG were all users of a consumer report who took adverse action against Mr. Jones prior to providing him with a copy of the background report and a reasonable opportunity of time to contest the accuracy of the report, and Mr. Jones lost his job with Halstead.

**ANSWER:  Sterling denies the allegations in this paragraph.**

35.    On or around July 24, 2012, Mr. Jones had a telephone conversation with someone at Sterling who informed him that Sterling would be closing out his dispute without removing any of the inaccurate criminal record information. Mr. Jones indicated to Sterling that he was not satisfied with the outcome.

**ANSWER:  Sterling lacks knowledge or information sufficient to**

**form a belief as to the truth of the allegations in this paragraph.**

36.    On July 30, 2012, Sterling sent Mr. Jones a letter responding to his dispute and informing him of the results of its reinvestigation (the "July 30 Letter"), along with another copy of his Sterling employment report, but this time dated, July 24, 2012. A copy of the July 30 Letter is attached hereto as Exhibit A. Among other things, the July 30 Letter represented that it contained Sterling's "Results of our Re-investigation" and informed him that Sterling was "unable to update [its] report as no contrary information was found that would enable or require [it] to do so." Ex. A.

**ANSWER:  Sterling admits that, on behalf of Halstead/BHS, it sent the letter attached as Exhibit A to the Complaint, and further admits that the letter attached as Exhibit A to the Complaint contains the language quoted in this paragraph.  Sterling denies that this paragraph accurately or completely quotes all of the language in the letter attached as Exhibit A to the Complaint.  Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

37.     However, in addition to failing to properly investigate Mr. Jones' dispute that the inaccurate criminal records did not belong to him, Sterling violated FCRA section 1681i(a)(6)(B)(iii) by failing to notify Mr. Jones that upon his request, Sterling would provide him a description of the procedure used to determine the accuracy and completeness of the information it had reported about him.

**ANSWER:  Sterling denies the allegations in this paragraph.**

38.     On or around August 13, 2012, Mr. Jones called Sterling again to dispute the criminal record information on the Sterling background check. He was told by someone at Sterling that Sterling would look into it, but Mr. Jones never heard back from Sterling in response to his August 2012 call.

**ANSWER:  Sterling admits that, on or about August 13, 2012, it received a telephone call from an individual who disputed information in the Report.  Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

39.     Though he had lost the job, on or around January 15, 2013, Mr. Jones disputed the inaccurate criminal records with Sterling yet again, as well as disputing a Fleet credit card account. In connection with his dispute, he included a Record of Arrests and Prosecutions  ("RAP Sheet") from the New York State's Division of Criminal Justice Services (DCJS) proving that that he did not have any criminal or non-criminal case history. Mr. Jones called Sterling to follow up on his dispute on or around January 21, 2013.

**ANSWER: Sterling admits that, on or about January 21, 2013, it received a telephone call from an individual who disputed information on the Report relating to criminal history information, as well as information relating to a "Fleet credit card." Sterling also admits that it received correspondence relating to this dispute. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

40.     Sterling sent Mr. Jones a letter, dated January 28, 2013, outlining that, in connection with his dispute, Sterling had "removed" the "criminal cases from New York" from his report as well as the Fleet credit card account, and enclosed a revised copy of the Sterling employment report.

**ANSWER: Sterling admits that it sent "KEVIN JONES" a letter dated January 28, 2013, that contained the language quoted in this paragraph. Sterling denies that this paragraph accurately or completely summarizes or quotes all of the language in that letter. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

41.     In May of 2013, Mr. Jones ordered a copy of his file from Sterling. On or around May 13, 2013, Sterling sent Mr. Jones an enclosure letter communicating that it was enclosing the "results to the pre-employment background screening" (the "May 13 File Disclosure").

**ANSWER: Sterling admits that, on or about May 13, 2013, an individual called Sterling to request a copy of the Report and that, on or about the same day, Sterling provided a copy of the requested document. Sterling denies any remaining allegations in this paragraph.**

42.     However, in violation of section 1681g of the FCRA and section 380-d of the NY-FCRA, the May 13 File Disclosure omitted important source data. While the file included a section entitled "SSTRACE," it did not disclose the source of the data, which was LexisNexis' Accurint database.

**ANSWER: Sterling denies the allegations in this paragraph.**

43.     In connection with its usual report and file generation procedures, Sterling's reports include a section for information which it terms "Social Security Trace" data. This information contains residential and address history by date, and full names and dates of birth for the consumer applicant associated with his or her social security number (the "Residential History Information"). However, in contravention of the FCRA and NY-FCRA, Sterling never discloses the source of such information to consumers who request their files.

**ANSWER: Sterling admits that certain consumer reports it furnishes for employment purposes contain a section titled "Social Security Trace" that includes information about names, dates of birth and "residential and address history by date" associated with the social security number of the applicant who is the subject of the report. Sterling denies the remaining allegations in this paragraph.**

44.     In addition to being required by law, disclosure of the source of the Residential History Information can be especially important and useful where Sterling has mixed the consumer applicant with another individual and/or misattributed another person's criminal records to the applicant. Such information can help the consumer identify whether the inaccurate personal identifying information is coming from a court, Sterling or Lexis Nexis, and dispute it with the correct source.

**ANSWER: Sterling denies Plaintiff's contention that disclosure of the alleged information is "required by law." Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

45.     The Residential History Information contained in the May 13 File Disclosure notes that the "YEAR OF BIRTH (… 1956) DOES NOT MATCH THE

INFORMATION PROVIDED TO STERLING (… 1955)." As a result of Sterling's failure to comply with the FCRA, Mr. Jones was unable to find out who was reporting an incorrect year of birth and dispute it with the source of that information.

**ANSWER: Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

46.     As a result of Sterling's repeated and widespread violations of the FCRA and NY-FCRA, Mr. Jones lost a job opportunity and remained without full-time employment for a significant period of time, and suffered a range of actual damages including lost wages, damage to his reputation, embarrassment, humiliation and emotional and mental distress.

**ANSWER: Sterling denies the allegations in this paragraph.**

**[CLASS ACTION ALLEGATIONS ]**

47.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes as follows:

**a.      For Sterling's Violations of NY-FCRA Section 380-g and FCRA Section 1681k(a)**

All employees or applicants for employment residing in the State of New York (a) who were the subject of a report sold by Defendant to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment, (d) within two years from the date of the filing of this action through and during the pendency of this action, and (e) to whom at the same time it furnished an electronic report, Defendant did not provide electronic notice to the consumer stating that a report was being furnished and containing the name of the person that was to receive the report, or to whom within one hour of when it furnished a non-electronic report Defendant did not mail notice to the consumer stating that a report was being furnished and containing the name of the person that was to receive the report.

**b.      For Sterling's Violation of FCRA Section 1681i(a)(6)(B)(iii)**

All persons residing in the United States of America (including all territories and other political subdivisions of the United States) to whom, within two years from the date of the filing of this action through and during the pendency of this action, in response to a dispute regarding an inaccuracy in an employment background report, Sterling sent a letter substantially in the form of the July 30 Letter, attached hereto as Exhibit A.

c.    **For Sterling's Violation of FCRA Section 1681g**

All persons residing in the United States of America (including all territories and other political subdivisions of the United States) to whom, within two years from the date of the filing of this action through and during the pendency of this action, in response to a request for their file, Sterling sent a file disclosure that included Social Security Trace Information.

d.    **For Sterling's Violation of NY-FCRA Section 380-d**

All persons residing in the State of New York to whom, within two years from the date of the filing of this action through and during the pendency of this action, in response to a request for their file, Sterling sent a report which included Social Security Trace Information.

**ANSWER:  Sterling admits that Plaintiff seeks certification of the four (4) classes alleged in this paragraph and denies that this matter may properly be maintained as a class action.**

48.    **Numerosity. Fed. R. Civ. P. 23(a)(1)**. The Class members are so numerous that joinder of all is impractical. Sterling sells thousands of consumer reports on employees and applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Sterling.

**ANSWER:  Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

49.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2)**. Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a)    Whether Sterling was required to send notification to consumers at the time that it reported public record information to employers of the Class that it was reporting public record information, along with the name of the person to whom it was reporting the information because it did not report records that were complete and up to date;

b)    Whether the results of reinvestigation that Sterling sent to consumers who disputed their consumer reports failed to comply with FCRA section 1681i(a)(6)(iii) by failing to provide the disputing consumer with a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information would be provided to the consumer,

along with the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available; and

        c)      Whether Sterling failed to provide the sources of its data in violation of the FCRA and NY-FCRA when it sent consumers file disclosures that contained Social Security Trace Data that did not identify LexisNexis and/or Accurint.

**ANSWER:  Sterling denies the allegations in this paragraph.**

50.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for damages that he seeks for absent class members.

**ANSWER:  Sterling denies the allegations in this paragraph.**

51.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

**ANSWER:  Sterling denies the allegations in the first text sentence of this paragraph.  Sterling lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.**

52.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Sterling's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Sterling's conduct. By contrast, the class action device will result in substantial

benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

**ANSWER: Sterling denies the allegations in this paragraph.**

**[CAUSES OF ACTION]**

**[COUNT I]**
**[NY GEN. BUS. LAW § 380-g]**
**[(NEW YORK CLASS CLAIM - INJUNCTION)]**

53.     Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER: Sterling incorporates its answers to Paragraph 1 through 52 as if fully restated herein.**

54.     Plaintiff is a "consumer," as defined by the NY-FCRA, section 380-a(b).

**ANSWER: On information and belief, Sterling admits the allegations in this paragraph.**

55.     Sterling's background reports are "consumer reports" within the meaning of the NY-FCRA, section 380-a(c).

**ANSWER: Sterling admits that certain background screening reports it prepares constitute "consumer reports" within the meaning of the NY FCRA. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

56.     Sterling is a "consumer reporting agency" within the meaning of the NY-FCRA, section 380-a(e).

**ANSWER: Sterling admits the allegations in this paragraph.**

57.     Section 380-g of the NY-FCRA provides that a consumer reporting agency which compiles and reports items of information on consumers which are matters of public record shall:

(a)     at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record

information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (b) maintain reasonable procedures designed to insure that whenever public record information is reported it is complete and up to date to the extent practicable. It shall be deemed a reasonable procedure for a consumer reporting agency to accurately report the status of public record information as of the date recorded in its files provided such information is updated on a regular basis.

**ANSWER: Sterling admits that this paragraph accurately quotes in part from Section 380-g of the NY FCRA but denies that this paragraph completely or accurately quotes all of the language in that section or accurately and completely describes the corresponding duties on a consumer reporting agency.**

58. On a regular, systemic and admitted basis, Sterling fails to obtain the complete and up to date public records that it sells to employers. As such, it is required to provide consumers with notice, per N.Y. Gen. Bus. Law § 380-g(a), at the time that it provides public record information to employers. It fails to do either in violation of NY-FCRA section 380-g.

**ANSWER: Sterling denies the allegations in this paragraph.**

**[COUNT II]**
**[FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681k]**
**[(NEW YORK CLASS CLAIM - DAMAGES)]**

59. Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER: Sterling incorporates its answers to Paragraph 1 through 58 as if fully restated herein.**

60. At all times pertinent hereto, Sterling was a consumer reporting agency which furnished consumer reports "for employment purposes and which for that purpose compiled and reported items of information on consumers which are matters of public record and are likely to have an adverse effect upon [consumers'] ability to obtain employment" as set forth in FCRA section 1681k.

**ANSWER: Sterling generally admits the allegations in this paragraph, but denies that every consumer report it prepares contains items of information subject to the mandates of Section 1681k of the FCRA.**

61.    As such, Sterling was required to comply with FCRA section 1681k(a)(1) or 1681k(a)(2). On a regular, systemic and admitted basis, Sterling fails to obtain the complete and up to date public records that it sells to employers. As such, it is required to provide consumers with notice, per 15 U.S.C. § 1681k(a)(1), at the time that it provides public record information to employers. It fails to do either in violation of FCRA section1681k(a).

**ANSWER: Sterling admits generally that it is subject to the mandates of Section 1681k of the FCRA when it includes certain items of public record information in consumer reports, but denies that this paragraph accurately and completely describes the mandates of that section. Sterling denies the remaining allegations in this paragraph.**

62.    The violations by Sterling were willful, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER: Sterling denies the allegations in this paragraph.**

### [COUNT III]
### [FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681i(a)(6)(B)(iii)]
### [(NATIONAL CLASS - DAMAGES)]

63.    Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER: Sterling incorporates its answers to Paragraph 1 through 62 as if fully restated herein.**

64.    Section 1681i(a)(6)(B)(iii) of the FCRA requires that in response to a consumer dispute of information in a consumer file, the CRA must, within 30 days, provide the consumer with "a notice that, if requested by the consumer, a

description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted…."

**ANSWER: Sterling admits that this paragraph characterizes and quotes in part from Section 1681i of the FCRA but denies that this paragraph completely or accurately quotes all of the language in that section or accurately and completely describes the corresponding duties on a consumer reporting agency.**

65.     Sterling willfully violated FCRA section 1681i(a)(6)(B)(iii) when it failed to provide such a notice to Mr. Jones when it sent him the July 30 Letter. Upon information and belief, the July 30 Letter is a form letter that Sterling sent to consumers throughout the country. Sterling's failure to comply resulted from a systemic practice that recklessly violated the FCRA. Similarly, Sterling recklessly violated the rights of all Class members who had made a dispute to it and received the same letter.

**ANSWER: Sterling lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of this paragraph. Sterling denies the remaining allegations in this paragraph.**

**[COUNT IV]**
**[FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681g]**
**[(NATIONAL CLASS - DAMAGES)]**

66.     Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER: Sterling incorporates its answers to Paragraph 1 through 65 as if fully restated herein.**

67.     Section 1681g of the FCRA requires that, upon request, every consumer reporting agency must provide a consumer, all information in the consumer's file, including the sources of the information.

**ANSWER: Sterling admits that this paragraph characterizes Section 1681g of the FCRA but denies that this paragraph accurately and completely describes the corresponding duties on a consumer reporting agency.**

68.     Sterling violated FCRA section 1681g, when in response to Mr. Jones' request, it sent him a file disclosure on or around May 13, 2013 that included Residential History Information but failed to include the source of such data.

**ANSWER: Sterling denies the allegations in this paragraph.**

69.     Given that Sterling's file disclosures routinely included Residential History Information and that its procedures uniformly failed to disclose the source of such data, Sterling willfully violated the rights of all class members who had made similar requests and received the same form file disclosure which omitted such source data.

**ANSWER: Sterling denies the allegations in this paragraph.**

### [COUNT V]
### [N.Y. GEN. BUS. LAW § 380-d]
### [(NEW YORK CLASS CLAIM - INJUNCTION)]

70.     Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER: Sterling incorporates its answers to Paragraph 1 through 69 as if fully restated herein.**

71.     Section 380-d of the NY-FCRA requires that, upon request, every consumer reporting agency must provide a consumer, all information in the consumer's file, including the sources of the information.

**ANSWER: Sterling admits that this paragraph characterizes Section 380-d of the NY FCRA but denies that this paragraph accurately and completely describes the corresponding duties on a consumer reporting agency.**

72.     Sterling violated section 380-d of the NY-FCRA, when in response to Mr. Jones' request, it sent him a file disclosure on or around May 13, 2013 that included Residential History Information but failed to include the source of such data.

**ANSWER:  Sterling denies the allegations in this paragraph.**

73.     Given that Sterling's file disclosures routinely included Residential History Information and that its procedures uniformly failed to disclose the source of such data, Sterling willfully violated the rights of all class members who had made similar requests and received the same form file disclosure which omitted such source data.

**ANSWER:  Sterling denies the allegations in this paragraph.**

74.     Sterling continues to violate section 380-d of the NY-FCRA at the current time, and will continue to violate it until this or another Court orders otherwise.

**ANSWER:  Sterling denies the allegations in this paragraph.**

**[COUNT VI]**
**[FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)]**
**[(PLAINTIFF v. STERLING)]**

75.     Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER:  Sterling incorporates its answers to Paragraph 1 through 74 as if fully restated herein.**

76.     Sterling is a "consumer reporting agency," as defined by FCRA, 15 U.S.C. § 1681a(f).

**ANSWER:  Sterling admits the allegations in this paragraph.**

77.     At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

**ANSWER:  On information and belief, Sterling admits the allegations in this paragraph.**

78.     At all times pertinent hereto, the above-mentioned background report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

**ANSWER: Sterling admits that the Report was a "consumer report" within the meaning of the FCRA. Sterling lacks knowledge or information sufficient to form a belief as to the truth of any remaining allegations in this paragraph.**

79.     Sterling violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff s background report and the files it published and maintained.

**ANSWER: Sterling denies the allegations in this paragraph.**

80.     As a result of Sterling's violations of 15 U.S.C. § 1681e(b), Plaintiff Jones suffered actual damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

**ANSWER: Sterling denies the allegations in this paragraph.**

81.     The violations by Sterling were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Sterling was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

**ANSWER: Sterling denies the allegations in this paragraph.**

82.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**ANSWER: Sterling denies the allegations in this paragraph.**

**[COUNT VII]**
**[N.Y. GEN. BUS. LAW § 380-f]**
**[(PLAINTIFF V. STERLING)]**

83.     Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER: Sterling incorporates its answers to Paragraph 1 through 82 as if fully restated herein.**

84. Sterling is a "consumer reporting agency," as defined by the NY-FCRA.

**ANSWER: Sterling admits the allegations in this paragraph.**

85. At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by NY-FCRA.

**ANSWER: On information and belief, Sterling admits the allegations in this paragraph.**

86. Section 380-f of the NY-FCRA requires CRAs to investigate consumer disputes and delete information that is inaccurate or cannot be verified.

**ANSWER: Sterling admits that this paragraph characterizes Section 380-f of the NY FCRA but denies that this paragraph accurately and completely describes the corresponding duties on a consumer reporting agency.**

87. Sterling violated N.Y. Gen. Bus. Law § 380-f by failing to investigate Mr. Jones' disputes of the inaccurate criminal history information in the summer of 2012 and verifying the information as belonging to him.

**ANSWER: Sterling denies the allegations in this paragraph.**

88. As a result of Sterling's violations of N.Y. Gen. Bus. Law § 380-f, Plaintiff Jones suffered actual damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

**ANSWER: Sterling denies the allegations in this paragraph.**

89. The violations by Sterling were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law 380-1. In the alternative, Sterling was negligent, which entitles Plaintiff to recovery under N.Y. Gen. Bus. Law § 380-m.

**ANSWER: Sterling denies the allegations in this paragraph.**

90.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Sterling in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-1 and § 380-m.

**ANSWER:  Sterling denies the allegations in this paragraph.**

## [COUNT VIII]
## [N.Y. GEN. BUS. LAW § 380-j(a)(3)]
## [(PLAINTIFF V. STERLING-INJUNCTION)]

91.     Plaintiff realleges and incorporates by reference all preceding allegations.

**ANSWER:  Sterling incorporates its answers to Paragraph 1 through 90 as if fully restated herein.**

92.     NY-FCRA Section 380-j(a)(3) provides that "[n]o consumer reporting agency shall report or maintain in the file on a consumer information . . . which it has reason to know is inaccurate."

**ANSWER:  Sterling admits that this paragraph characterizes and quotes in part from Section 308-j of the NY FCRA but denies that this paragraph completely or accurately quotes all of the language in that section or accurately and completely describes the corresponding duties on a consumer reporting agency.**

93.     Sterling violated section 380-j(a)(3) of the NY-FCRA by representing that the criminal records it reported about Mr. Jones were reported as they appeared exactly in the public record, when in fact Sterling knew that it had not actually obtained the public records.

**ANSWER:  Sterling denies the allegations in this paragraph.**

## [JURY DEMAND]

Plaintiff hereby demands a trial by jury.

**ANSWER:  Sterling admits only that Plaintiff demands a trial by jury.  Sterling denies any remaining allegations in this paragraph.**

## STERLING INFOSYSTEMS, INC.'S DEFENSES

1. Any purported damages to Plaintiff or the putative class members, which Sterling continues to deny, are the result of the acts or omissions of persons or entities other than Sterling.

2. Interpretations of the FCRA and the NY FCRA upon which the Complaint are based are unconstitutionally vague and overbroad and thus violate the due process clause of the Fifth Amendment to the United States Constitution, and the due process provision of the Fourteenth Amendment to the United States Constitution.

3. The conduct about which Plaintiff complains is speech protected by the First Amendment to the United States Constitution.

4. To the extent that any relief sought by Plaintiff would be duplicative of relief sought by other plaintiffs in other lawsuits, subjecting Sterling to the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth Amendments to the United States Constitution.

5. Plaintiff has suffered no injury and does not have standing to assert any of the causes of action enumerated in the Complaint.

6. Certain of the NY FCRA obligations claimed by Plaintiff may be preempted by the FCRA.

7. In the event that a settlement is reached between Plaintiff or any other putative class member and any other person or entity, Sterling is entitled to any settlement credits permitted by law.

8.     Plaintiff has failed to mitigate any claimed damages.

9.     The claims for statutory damages and punitive damages are barred in whole or in part by the Excessive Fines and/or Due Process Clauses of the United States Constitution.

**WHEREFORE**, Defendant Sterling Infosystems, Inc. respectfully requests that this Court dismiss Plaintiffs' Class Action Complaint in its entirety with prejudice and award any such further relief to Sterling Infosystems, Inc.as this Court deems just and equitable.

Dated:  August 4, 2014                    Respectfully submitted,

                                          **STERLING INFOSYSTEMS, INC.**

                          By:     s/ Albert Hartmann

                                  Michael O'Neil (*pro hac vice*)
                                  Albert Hartmann (*pro hac vice*)
                                  REED SMITH LLP
                                  10 S. Wacker Dr., 40th Floor
                                  Chicago, IL 60606-7507
                                  Tel:  (312) 207-1000
                                  Fax:  (312) 207-6400
                                  *michael.oneil@reedsmith.com*
                                  *ahartmann@reedsmith.com*

                                  Casey Laffey (4276556)
                                  Eric Farber (EF-1049)
                                  REED SMITH LLP
                                  599 Lexington Ave., 22nd Floor
                                  New York, NY 10022
                                  Tel:  (212) 521-5400
                                  Fax:  (212) 521 5450
                                  *claffey@reedsmith.com*
                                  *ekfarber@reedsmith.com*

                                  *Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that I caused the foregoing **DEFENDANT STERLING INFOSYSTEMS, INC.'S ANSWER AND DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT** to be filed with the United States District Court for the Southern District of New York's Electronic Case Filing System. Pursuant to Federal Rule of Civil Procedure 5(b)(3) and United States District Court for the Southern District of New York ("SDNY") Local Rule 5.2 and SDNY Electronic Case Filing Rule & Instruction 9.1, I have thereby electronically served all Filing Users.

s/ Albert Hartmann

Albert Hartmann (*pro hac vice*)
REED SMITH LLP
10 S. Wacker Dr., 40th Floor
Chicago, IL 60606-7507
Tel: (312) 207-1000
Fax: (312) 207-6400
*ahartmann@reedsmith.com*

*Attorney for Defendant*