# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEVIN A. JONES, on : C.A. No.
behalf of himself and :
others similarly situated, :
                           :
           Plaintiffs, :
                           :
     vs,. :
                           :
STERLING INFOSYSTEMS, INC.,:
                           :
           Defendant. : 14-CV-03076-VEC

- - -

THE VIDEOTAPED DEPOSITION OF
CURT SCHWALL
THURSDAY, NOVEMBER 6, 2014
- - -

        The videotaped deposition of CURT SCHWALL,
called by the Plaintiffs for examination pursuant
to the Federal Rules of Civil Procedure, taken
before me, the undersigned, Elaine S. Newlin,
Notary Public within and for the State of Ohio,
taken at the Regus Business Center, 6100 Oak
Tree Boulevard, Suite 200, Cleveland, Ohio,
commencing at 8:50 a.m., the day and date above
set forth.
                  - - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers

1500 Walnut Street, Suite 1610

Philadelphia, Pennsylvania 19102

424 Fleming Pike, Hammonton, New Jersey 08037

(215) 985-2400 * (609) 567-3315 * (800) 447-8648

www.summitreporting.com

1  APPEARANCES:

2       On behalf of the Plaintiffs:

3            James A. Francis, Esquire
             Lauren Brennan, Esquire
4            Francis & Mailman
             Land Title Building, 19th Floor
5            100 South Broad Street
             Philadelphia, Pennsylvania  19110
6            215-735-8600
             jfrancis@consumerlawfirm.com
7            lbrennan@consumerlawfirm.com

8
        On behalf of the Defendant:
9
             Michael O'Neil, Esquire
10           Reed Smith, LLP
             10 South Wacker Drive, 40th Floor
11           Chicago, Illinois  60606-7507
             312-207-2879
12           michael.oneil@reedsmith.com

13
   ALSO PRESENT:
14
             Paul Szilagy, Videographer
15

16

17

18

19

20

21

22

23

24

25

1      knowledgeable manner?

2   A   Yes.

3   Q   All right.  Are you familiar generally with

4      Sterling Infosystems' procedures for obtaining

5      criminal record information from the State of

6      New York?

7   A   Yes.

8   Q   Can you identify for me the method by which

9      Sterling obtains criminal record information

10     from the State of New York?

11   A   Yes.

12   Q   Please do.

13   A   Information's obtained through the Office of

14     Court Administration using their electronic

15     process for requesting information.

16   Q   How long has Sterling Infosystems used that

17     method for obtaining criminal records

18     information from New York?

19   A   Since at least prior to the acquisition of

20     Acxiom Information Security Services.

21   Q   So that was -- that method was in place at

22     least going back as far as February 2012?

23   A   Yes.

24   Q   Are you familiar with something called the

25     Argentum CRIM fulfillment process?

1      document and can identify it.

2   A   I've seen this document before.

3   Q   And what is it?

4   A   It is the New York Courts Criminal History

5      Record Search access process.

6   Q   And does this document, does Sterling 18

7      outline, at least in part, the -- the source of

8      Sterling's criminal records that it uses for

9      public records reports in New York?

10  A   Yes.  It outlines what we use and every other

11     consumer reporting agency who orders New York

12     statewides.

13  Q   And when you mention that the method and the

14     process that Sterling uses for obtaining

15     New York Court records was an electronic

16     process, is this the source that you're

17     referring to, the New York Courts.gov?

18  A   The source of the information is the New York

19     Office of Court Administration.

20  Q   And that's -- that's what's referred here as

21     OCA?

22  A   Correct.

23  Q   So is it -- is it fair for me to state that

24     whenever Sterling sells one of its clients a

25     background check which includes a public record

1    obtained from the State of New York, Erie

2    County, Lancaster Village Court based on the

3    information contained in the report that

4    Sterling Infosystems sold Halstead about

5    Mr. Jones.

6         I asked you before about whether you knew

7    what a Certificate of Disposition was.  Does

8    this at all refresh your recollection or assist

9    you in answering the question of what a

10   Certificate of Disposition is?

11  A  I've seen documents like this.

12  Q  So are you aware that documents like this are

13   available in the public record from New York

14   that anybody can get?

15                  MR. O'NEIL:        Objection.

16   Vague.

17        Are you suggesting that these are

18   existing in the public record, Mr. Francis, or

19   are you --

20                  MR. FRANCIS:       Well, number

21   one, I'm asking the witness.  If you have an

22   objection, you can place an objection on the

23   record.

24                  MR. O'NEIL:        Well, vague.

25   Vague.

1          MR. FRANCIS:        Fine.

2          MR. O'NEIL:        Incomplete

3    hypothetical.

4  Q   You can answer.

5  A   It's possible to get these types of documents.

6  Q   So in connection with this case, you're not

7    saying that Sterling, unlike my office, is

8    unable to get a record like this, like a

9    Certificate of Disposition about a particular

10   record, correct?

11 A   Not unable.

12         MR. FRANCIS:        Are we on 20?

13         THE REPORTER:       We are on 20.

14         MR. FRANCIS:        Would you

15   mark that as 20, please?

16      There you go, Mike.

17         MR. O'NEIL:        Thank you.

18         - - - - -

19     (Sterling Exhibit No. 20 was marked.)

20         - - - - -

21 Q   Sir, I'm handing you another document.  This

22   has been marked Sterling 20 and ask you if you

23   recognize what this is.  This is a document

24   that was also produced to us in this

25   litigation.

**CURT SCHWALL**

1   A   Generally --

2   Q   Currently.

3   A   Generally, yes.

4   Q   Okay.  Good.

5         All right.  So if you look at the second

6      question, "How does OCA's Criminal History

7      Record Search program work?", it reads in

8      answer to that question, "You need to have the

9      individual's full name and date of birth.  You

10     can submit your search via OCA's on-line

11     application called Direct Access or you can

12     complete the CHRS application form which can be

13     downloaded from the New York Courts website,"

14     and it gives the URL.  Do you see that?

15  A   Yes.

16  Q   So does Sterling use the online application or

17     does it use the CHRS application form?

18  A   I'm not sure which process we use.  It's

19     electronic communication with the OCA.

20  Q   Okay.  So one of my questions was do you know

21     whether there's any difference between the

22     information that you get when you use the

23     online application versus the CHRS application

24     form.

25         MR. O'NEIL:     Objection.

```
1          Objection.  Lack of foundation.
2    Q     You can answer.
3    A     I'm not aware of a difference.
4    Q     Do you know how that -- how the process works
5          of using the form?  Like what do you have to do
6          in order to use the form and the timeframe
7          turnaround?
8    A     I'm generally aware of the form.
9    Q     So are you -- do you know whether or not
10         Sterling uses the online application or the
11         form?
12   A     We communicate electronically to our system.
13         I'm not sure whether they consider that the
14         Direct Access method or the CHRS method.
```

[REDACTED]

8   Q   All right.  And would you turn to two exhibits

9       ago?  It's the same -- from the same website,

10      Sterling 18.  Right there (indicating).

11  A   Okay.

12  Q   I have some questions about that.

13          If you look at Sterling 18, there's a

14      reference that "The cost for a New York State

15      OCA Criminal History Record Search request is

16      $65."  Do you see that?

17  A   Yes.

18  Q   Is that what it currently costs Sterling to

19      perform one of these searches?

20  A   Yes.

21  Q   Has that price changed over the last say two --

22      two or three years?

23  A   I don't recall the last price increase.  There

24      have been price increases over the years.

25  Q   And is that the actual price Sterling pays, or

**CURT SCHWALL**

| | | |
|---|---|---|
| 1 | | grab the files from AGCRIM Role Worklist."  Do |
| 2 | | you see that? |
| 3 | A | Yes. |
| 4 | Q | What is the AGCRIM Role Worklist that's |
| 5 | | referenced there? |
| 6 | A | That's the Argentum CRIM list. |
| 7 | Q | And it's a list of what? |
| 8 | A | Of searches to be performed for that |
| 9 | | jurisdiction. |
| 10 | Q | So these are searches that have been listed in |
| 11 | | Argentum from clients of Sterling's, correct? |
| 12 | A | Yes. |
| 13 | Q | All right.  And correct me if I'm wrong.  It |
| 14 | | refers to a batch of a minimum 50 applicants at |
| 15 | | a time.  Do I read that correctly to mean that |
| 16 | | the system waits until there are 50 requests |
| 17 | | that are put in by a client before it does the |
| 18 | | search? |
| 19 | A | No. |
| 20 | Q | Why am I wrong?  What is it -- when it says |
| 21 | | that "We upload the Batch of minimum 50 |
| 22 | | applicants at a time," what does that mean? |
| 23 | A | That the submission process requires at least |
| 24 | | 50 applicants you'd reference from a client. |
| 25 | | This would be for clients. |

1   Q   So it's not per client, it's just all 50 at a

2       time?

3   A   Yes.

4   Q   Okay.  I got you.

5       And the little -- the screen shot that is

6       underneath that sentence, what is that a screen

7       shot of?

8              MR. O'NEIL:        I'm sorry,

9       Mr. Francis.  What page are you on?

10            MR. FRANCIS:        I'm sorry.

11      The first page of Sterling 23.

12   A   Oh.  I'm sorry.  I'm on page 2.

13       This is a screen shot from our system.

14   Q   Okay.  Now, is this a screen shot -- if you

15       look at below, there are -- it looks like there

16       are three Order numbers to Order IDs.  Do you

17       see that?

18   A   Yes.

19   Q   Does each one of those Order ID numbers pertain

20       to a particular search that was submitted by a

21       client?

22   A   Yes.

23   Q   And is the information that is captured within

24       that, those columns, is that the information

25       that the client provides to Sterling for use in

1  BY MR. FRANCIS:

2  Q   Mr. Schwall, before we took a break, I was

3      asking you some questions about the types of

4      information that your staff, operation staff is

5      required to get before returning a public

6      record.

7          Would you turn back to Sterling 19,

8      please?

9  A   Sure.  Okay.

10 Q   In connection with fulfilling a customer's

11     request for a background check, is your -- does

12     your company require that the -- the employee

13     get the Certificate of Disposition like as

14     appears in Sterling 19 before reporting on a

15     record?

16 A   No.

17         (Discussion held off the record.)

18             MR. FRANCIS:       Would you

19     mark this as -- do you have one for Michael?

20             MS. BRENNAN:       Yes.

21             MR. FRANCIS:       Would you

22     mark this as -- where are we?  24?

23             THE REPORTER:      24.

24                 - - - - -

25         (Sterling Exhibit No. 24 was marked.)

**CURT SCHWALL**







[redacted]

[redacted]

MR. O'NEIL: Object.

Q Go ahead.

1    beyond the scope of this Rule 30(b)(6)

2    deposition.

3  Q  You can answer.

4  A  Yes.

5  Q  Do you know who drafted the language that's in

6    that section of the report?

7           MR. O'NEIL:        Same

8    objection.

9  A  I do not know.

10 Q  You agree with me, sir, that Sterling reported

11   four criminal records about Mr. Jones back in

12   July of 2012 to Brown Harris Stevens Group?

13 A  There were four reported charges.

14 Q  And based upon your review of the documents in

15   this case and your position as a compliance

16   officer, was the reporting of those four

17   charges about Mr. Jones to Halstead in July

18   of 2012 consistent with and compliant with

19   Sterling's procedures for reporting criminal

20   records to employers?

21 A  They were compliant at that time.

22 Q  Would it not be compliant today?

23           MR. O'NEIL:        Objection.

24   Vague.

25 Q  You can answer.

```
 1                    MR. O'NEIL:        Objection.
 2     Misstates the evidence.  There is no middle
 3     initial in the pages that you refer to,
 4     Mr. Francis.
 5                    MR. FRANCIS:       I know that.
 6                    MR. O'NEIL:        Can you
 7     repeat -- can you -- Ms. Court Reporter, can
 8     you please read back Mr. Francis's question?
 9                    (Record was read.)
10  Q  Correct.
11                    MR. O'NEIL:        Are you
12     answering your own question or --
13                    MR. FRANCIS:       No.  I'm
14     saying that that's the correct question.
15  A  The match for what was provided to us, Kevin no
16     middle initial Jones, is what came back on the
17     record --
18  Q  Right.
19  A  -- and thus it was reported at that time in
20     compliance with our processes.
21  Q  Right.  Mr. O'Neil was asking you questions
22     that Halstead or Brown Harris Stevens did not
23     supply a middle initial to you, correct?
24  A  That's correct.
25  Q  Right.  Now, so you're getting Kevin Jones
```

1    without a middle initial or a middle name,

2    correct?

3  A  The record came back without.

4  Q  Right.  So if you have concerns, I have somebody

5    with a very common name, first and last name,

6    no middle initial anyway, if you wanted to find

7    out whether or not the charges that were being

8    reported in response to your runner search, you

9    could have gone to the courthouse for each one

10   of those records to see that there was a

11   different middle initial and name, correct?

12 A  Yes.

13 Q  You could have gone to the County of Erie,

14   State of New York, Village of Lancaster and

15   found the Information/Complaint that showed a

16   Kevin M. Jones, correct?

17 A  Yes.

18 Q  Okay.  You could have gone to the State of New

19   York, Erie County and pulled the Certificate of

20   Disposition to find that there was a Kevin M.

21   Jones with a middle initial, correct?

22 A  Correct.

23 Q  You could have gone and gotten the actual

24   record which showed you that the middle name

25   was Kevin Morgan Jones, correct?

1   A    Yes.

2   Q    But you didn't, correct?

3   A    It matched our matching criteria.

4   Q    Nobody went and did that, correct?  That's my

5        question.

6   A    That's correct.

7             MR. FRANCIS:        No further

8        question.

9             MR. O'NEIL:         I have one

10       more question.

11                  - - - - -

12           RE-EXAMINATION OF CURT SCHWALL

13  BY MR. O'NEIL:

14  Q    Mr. Schwall, take a look at the indicative

15       information on the pages that Mr. Francis

16       pointed to, and by that I mean the indicative

17       information on the July 2012 report.

18  A    Uh-huh.

19  Q    In light of Mr. Francis's very exuberant

20       questions to you, do you see any information

21       on these pages that suggests that there is

22       discrepancy in the middle initial?

23  A    No.

24  Q    Or that there is something that should be

25       investigated?

1　THE STATE OF OHIO,　　)　　SS:
　COUNTY OF CUYAHOGA.　　)

2

3　　　I, Elaine S. Newlin, a Notary Public within

4　and for the State of Ohio, duly commissioned and

5　qualified, do hereby certify that CURT SCHWALL was

6　first duly sworn to testify the truth, the whole

7　truth and nothing but the truth in the cause

8　aforesaid; that the testimony then given by him

9　was by me reduced to stenotypy in the presence of

10　said witness, afterwards transcribed on a computer/

11　printer, and that the foregoing is a true and

12　correct transcript of the testimony so given by

13　him as aforesaid.

14　　　I do further certify that this videotaped

15　deposition was taken at the time and place in the

16　foregoing caption specified.  I do further certify

17　that I am not a relative, counsel or attorney of

18　either party, or otherwise interested in the event

19　of this action.

20　　　IN WITNESS WHEREOF, I have hereunto set my

21　hand and affixed my seal of office at Cleveland,

22　Ohio, on this 18th day of November, 2014.

23

24　　　　　　　　Elaine S. Newlin, Notary Public
　　　　　　　　　Within and for the State of Ohio.
25　　　　　　　　My Commission expires August 22, 2015