# EXHIBIT 18

```
            IN THE UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK

KEVIN A. JONES, on           :  C.A. No.
behalf of himself and        :
others similarly situated,   :
                             :
           Plaintiffs,       :
                             :
    vs,.                     :
                             :
STERLING INFOSYSTEMS, INC.,  :
                             :
           Defendant.        :  14-CV-03076-VEC

                        - - -
           THE VIDEOTAPED DEPOSITION OF
              VERONIQUE LaVERDIERE
           WEDNESDAY, NOVEMBER 5, 2014
                        - - -
```

        The videotaped deposition of VERONIQUE
LaVERDIERE, called by the Plaintiffs for
examination pursuant to the Federal Rules
of Civil Procedure, taken before me, the
undersigned, Elaine S. Newlin, Notary Public
within and for the State of Ohio, taken at
the Regus Business Center, 6100 Oak Tree
Boulevard, Suite 200, Cleveland, Ohio,
commencing at 11:04 a.m., the day and date
above set forth.

                        - - -


            SUMMIT COURT REPORTING, INC.
     Certified Court Reporters and Videographers
            1500 Walnut Street, Suite 1610
            Philadelphia, Pennsylvania  19102
     424 Fleming Pike, Hammonton, New Jersey  08037
     (215) 985-2400 * (609) 567-3315 * (800) 447-8648
                  www.summitreporting.com

```
 1   APPEARANCES:
 2        On behalf of the Plaintiffs:
 3             James A. Francis, Esquire
               Lauren Brennan, Esquire
 4             Francis & Mailman
               Land Title Building, 19th Floor
 5             100 South Broad Street
               Philadelphia, Pennsylvania  19110
 6             215-735-8600
               jfrancis@consumerlawfirm.com
 7             lbrennan@consumerlawfirm.com
 8
          On behalf of the Defendant:
 9
               Michael O'Neil, Esquire
10             Reed Smith, LLP
               10 South Wacker Drive, 40th Floor
11             Chicago, Illinois  60606-7507
               312-207-2879
12             michael.oneil@reedsmith.com
13
     ALSO PRESENT:
14
               Shawn Moreau, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

1  just tell me the -- tell me the paragraphs or
2  the words which in your view represent a
3  description of the investigation procedures.
4  A  Well, that would be page 2 under Results of our
5     Re-Investigation.
6  Q  Okay.
7  A  We know it was poorly handled and that dispute
8     was not re-investigated properly, so I will not
9     be able to tell you specifically how the
10    re-investigation was explained to the consumer
11    because really there was no re-investigation
12    conducted here.
13 Q  Is it your testimony that had the company
14    investigated, there would be a different
15    description here?
16 A  Definitely.
17 Q  And just so I know, because I'm trying to
18    figure out where in the letter it would be,
19    would that be -- would that description be
20    under Results of our Re-Investigation?
21 A  Yes.
22 Q  And would it be in the first paragraph, the
23    second paragraph?  Where is the description
24    that you were referring to previously there?
25 A  That would be in the first paragraph.

1  Q   And why do you say the investigation was
2      handled poorly?
3  A   Because if the associate had reviewed the
4      report carefully, Mr. Jones was disputing
5      information on the report.  The only criminal
6      information on the report was out of New York,
7      not Florida, so regardless of the documentation
8      he had provided, the New York cases should have
9      been re-investigated at the time.
10 Q   And they weren't, correct?
11 A   Correct.
12 Q   All right.  And then that should have appeared
13     there in the first paragraph under the Results
14     of our Re-Investigation?
15 A   Yes.
16 Q   Do you know as you sit here today why that
17     didn't happen?
18 A   Why it didn't happen?  That was not -- I don't
19     know.  I have no idea why she did not
20     re-investigate the New York cases.  Other way
21     is she could have maybe called the applicant,
22     because whenever notes in Salesforce are
23     unclear or some more information is needed from
24     the applicant, the first thing you do is give a
25     call to the applicant and discuss that dispute

```
1              objection.
2     A    We may sometimes obtain additional identifiers
3          from the court, yes, and give --
4     Q    Will they give it to you?
5     A    Sometimes they will.  They will confirm.  We
6          can provide information to them and they will
7          confirm yes or no that's what they have on
8          file.
9     Q    And based upon your review of Sterling 11 and
10         12, is it your understanding that nobody
11         contacted the court in connection with
12         Mr. Jones's July 16th dispute?
13    A    That is my understanding.
14    Q    And it's your testimony that they should have,
15         correct?
16    A    Yes.
17    Q    All right.  Would you look at Sterling 13,
18         please?  Can you tell me what this record is
19         and what it communicates?
20    A    So this record is from August 13, 2012.  It was
21         logged by Victoria Francis, customer service,
22         and it indicates that the applicant called
23         stating that the charges are not his and he was
24         not convicted nor arrested.
25    Q    And was this dispute from August 13th of 2012
```

**VERONIQUE LaVERDIERE**

1         handled by anyone at Sterling?
2   A  This was Linda Froom -- I'm not sure what she
3         did -- back in August. It looks like the first
4         time this record was touched, so it was logged
5         August 13 and then Linda Froom assigned the
6         case to Karen Veliz who was part of the dispute
7         team in California on the 22nd and Karen Veliz
8         investigated that claim.
9   Q  And what, if anything, did she do to
10        investigate the claim?
11   A  She contacted the court in New York.
12   Q  And was she able to communicate with somebody
13        at the court in New York?
14   A  Yes, and she received a -- an e-mail from the
15        clerk.
16   Q  And are the communications that Sterling had
17        regarding Mr. Jones's August 13th, 2012
18        dispute, are they documented in Sterling 13?
19   A  Can you please repeat the question?
20   Q  Sure. In other words, if you look at Sterling
21        13 --
22   A  Uh-huh.
23   Q  -- this Sterling 13 reflects the communications
24        that your company's personnel had with the
25        court regarding Mr. Jones's August 13th, 2012

1           dispute, correct?
2    A   Yes.
3    Q   And this record, Sterling 13, also reflects
4           what, if anything, your company did in
5           connection with Mr. Jones's August 13th
6           dispute, correct?
7    A   Yes.
8    Q   Do you know of any other record which indicates
9           any other activity the company took with regard
10          to Mr. Jones's August 13, 2012 dispute?
11   A   No.
12   Q   Have you had an opportunity to review this
13          record before today?
14   A   Yes, I did.
15   Q   And was Mr. Jones's dispute handled in
16          accordance with Sterling's procedures in
17          August of 2012?
18   A   No.
19   Q   Why not?
20   A   Because under FCRA, whatever we cannot
21          validate, we have to remove from the report.
22   Q   And what were you unable to validate?
23   A   Further identifiers for two of the cases, so
24          for two cases, the clerk had confirmed I
25          believe that the Social was not a match and

1  those two cases were removed from the report,
2  but I do not see that we confirmed the
3  defendant's identifiers for the other two
4  cases; however, they were maintained on the
5  report and they should not have been maintained.
6  Q  Is it your testimony that Sterling actually did
7     remove two of the records from Mr. Jones's report
8     in August of '12?
9  A  Yes.
10 Q  Okay.  And in connection with the removal or
11    re-investigation of those cases, did they send
12    him a re-investigation results letter?
13 A  Isn't it the letter that was attached?  No,
14    that's not it.  That's not it.
15    That presentation letter should have been
16    attached to the case in Salesforce and I do not
17    see an attachment.
18 Q  Well, the reason I ask you is because I don't
19    think we've ever seen it, okay, and I don't
20    think he ever got one, so the reason I'm asking
21    you is, do you know -- do you know, in fact,
22    from your review of the record whether or not,
23    in fact, Sterling did send him a
24    re-investigation results letter with the August
25    of '12 dispute like it did with the earlier one?

1                is an accurate reflection of what the clerk
2                provided Sterling back --
3           A    Yes.
4           Q    -- in July of 8 -- excuse me -- September 18th,
5                2012?
6           A    Yes.
7           Q    Does Sterling have a standard time period
8                that -- well, strike that.
9                     Does your company have a procedure for
10               responding to consumer disputes within a
11               certain time period?
12          A    Definitely.
13          Q    What is the time period that you require your
14               staff to complete an investigation?
15          A    30 calendar days.
16          Q    30 calendar days.  Okay.  You --
17          A    With --
18          Q    Go ahead.
19          A    With the possibility of a 15-day extension
20               under certain circumstances.
21          Q    Okay.  Would you agree with me that this
22               dispute was opened on August 13th, 2012?
23          A    Yes.
24          Q    Would you agree with me that it was not
25               completed within 30 calendar days?

1  A  Yes.
2  Q  Do you know when it was completed, if at all?
3  A  I see that it was closed October 19th, 2012 by
4     customer service, but since we don't have the
5     resolution letter or notes, I cannot tell you
6     when exactly that letter was -- when that
7     dispute was actually resolved.
8  Q  Okay.  But would you agree with me that the
9     information that Sterling got from the Clerk of
10    the Town of Orchard Park Court as well as the
11    Erie County Supreme and County Courts, that
12    that information was being provided in
13    September 18th, 2012?
14 A  Yes.
15 Q  And that's after the 30 days, correct?
16 A  Correct.
17 Q  All right.  So that's outside of the timeline,
18    correct?
19 A  Definitely.
20 Q  So would you agree with me that this was not --
21    this investigation was not conducted within 30
22    days as Sterling requires?
23 A  Correct.
24 Q  Do you know why there are communications on
25    September 18th, 2012 and then there's a gap

```
1   THE STATE OF OHIO,    )    SS:
    COUNTY OF CUYAHOGA.   )
2

3        I, Elaine S. Newlin, a Notary Public within
4   and for the State of Ohio, duly commissioned and
5   qualified, do hereby certify that VERONIQUE
6   LaVERDIERE was first duly sworn to testify the
7   truth, the whole truth and nothing but the truth in
8   the cause aforesaid; that the testimony then given
9   by her was by me reduced to stenotypy in the
10  presence of said witness, afterwards transcribed
11  on a computer/printer, and that the foregoing is a
12  true and correct transcript of the testimony so
13  given by her as aforesaid.
14       I do further certify that this videotaped
15  deposition was taken at the time and place in the
16  foregoing caption specified.  I do further certify
17  that I am not a relative, counsel or attorney of
18  either party, or otherwise interested in the event
19  of this action.
20       IN WITNESS WHEREOF, I have hereunto set my
21  hand and affixed my seal of office at Cleveland,
22  Ohio, on this 17th day of November, 2014.
23
24                    Elaine S. Newlin, Notary Public
                      Within and for the State of Ohio.
25                    My Commission expires August 22, 2015
```