

**Michael O'Neil**
Direct Phone:  +1 312 207 2879
Email:  michael.oneil@reedsmith.com

September 18, 2015

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/6/2015

Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
Tel +1 312 207 1000
Fax +1 312 207 6400
reedsmith.com

*VIA ECF DELIVERY*

Hon. Valerie E. Caproni
United States District Judge
Souther District of New York
Thurgood Marshall United States Courthouse
40 Foley Square. Courtroom 443
New York, NY 10007

Request DENIED.
SO ORDERED.

*[signature: Valerie Caproni]*

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

October 6, 2015

Re:   **Jones v. Sterling Infosystems, Inc.**, Case No. 14-cv-03076-VEC (S.D.N.Y.)

Dear Judge Caproni:

Reed Smith LLP represents Defendant Sterling Infosystems, Inc. ("Sterling") in the above-referenced matter.[1]  We submit this letter motion to respectfully request a stay of proceedings pending the U.S. Supreme Court's decisions in two cases which will directly impact threshold legal questions raised by Plaintiff Kevin A. Jones ("Plaintiff") and his pending Rule 23 motion for class certification.  One decision will address the requirements for Article III standing for a plaintiff, as Plaintiff here, asserting claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").  The other Supreme Court decision will determine whether a court certifying a class must ensure that each class member possesses Article III standing.  Both decisions are expected no later than June 2016.  Plaintiff does not consent to Sterling's request to stay this case.

**I.   INTRODUCTION**

Plaintiff seeks class certification of a claim that Sterling willfully violated the FCRA by not sending to class members a notice purportedly required by the FCRA, 15 U.S.C. § 1681k(a)(1).  Plaintiff's Rule 23 motion is fully briefed. (See ECF 33-34, 44 and 47.)  In light of the class that Plaintiff seeks to certify, this Court should be aware of an emerging body of case law staying similar FCRA and other statutory class actions pending the Supreme Court's decisions in Robins v. Spokeo, 742 F.3d 409 (9th Cir. 2014), cert. granted, 135 S.Ct. 1892 (U.S. Apr. 27, 2015), and Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791 (8th Cir. 2014), cert. granted, 135 S.Ct. 2806 (U.S. June 8, 2015).

---

[1] We also represent Sterling in the related action Jones v. Halstead Management Company, LLC et al., Case No. 1:14-cv-03125-VEC (S.D.N.Y).  Neither this letter motion nor the relief requested therein will impact that action.

Hon. Valerie E. Caproni
September 18, 2015
Page 2

ReedSmith

In Spokeo, the Supreme Court will consider whether the mere deprivation of a statutory right, absent some other allegation of true "injury-in-fact," is sufficient to establish Article III standing.  In Tyson Foods, the Supreme Court will consider the related question of whether each member of a certified class must also possess Article III standing.[2]  Here, there is little question that Plaintiff has standing, given his allegations of actual injury, i.e., the loss of temporary, part-time employment.  However, there is no evidence that each member of the putative classes that Plaintiff seeks to certify have any alleged injury.  Indeed, given Plaintiff's position on this latter point, it is clear that the vast majority of class members have suffered no injury-in-fact caused by the alleged FCRA violation.  Therefore, depending on how the Supreme Court resolves the pending cases, those decisions may preclude Rule 23 certification here.

Since the Supreme Court's grants of certiorari in Spokeo and Tyson Foods, numerous other courts have stayed putative class actions asserting "no-injury" FCRA claims.  These courts clearly recognized that the forthcoming decisions would potentially require them to re-visit any decisions granting Rule 23 certification where the class member's only claimed injury-in-fact was the deprivation of an FCRA statutory right.

Here, Plaintiff's Rule 23 motion seeks certification of two classes where the only alleged class-wide injury is the deprivation of a right created by the FCRA.  If the mere deprivation of a statutory right is not enough to establish the standing of every absent putative class member, then class certification here will be improper.  Accordingly, Sterling seeks a stay so that this Court will have the benefit of the forthcoming Supreme Court decisions in Spokeo and Tyson Foods before issuing any decision on Plaintiff's pending motion for class certification  However, if the Court intends to deny Plaintiff's motion, then the pending Supreme Court rulings should have no impact on Plaintiff's individual FCRA claims for monetary damages, and a stay is not necessary.

## II. BACKGROUND

### A. Procedural Background

At the outset of this case, based on the parties' agreement, this Court bifurcated class-certification and merits discovery. (ECF 25.) Class-certification discovery is complete, and Plaintiff's Rule 23 motion is fully briefed and under consideration by the Court.  Until the Court rules on that motion and sets a schedule for conducting merits discovery, this case is essentially stayed.  This bifurcated schedule reflects the basic reality that until the parties – and the Court – know the true scope of this case, i.e., which claims are class claims and which are only individual, they cannot effectively determine the scope of discovery necessary to resolve the case (whether by settlement or otherwise).

---

[2] The Second Circuit has made clear that, "no class may be certified that contains members lacking Article III standing."  Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2nd Cir. 2006).

Hon. Valerie E. Caproni
September 18, 2015
Page 3

ReedSmith

     By his Rule 23 motion, Plaintiff seeks to certify a nationwide class of job applicants about whom Sterling reported New York criminal records. (ECF 34, Mem. at 3.)[3] According to Plaintiff, Sterling violated Section 1681k(a) of the FCRA as to each applicant by not sending a notice that it was including potentially adverse criminal records in background screening reports about each applicant. (Mem. at 4-6.)[4] According to Plaintiff, because Sterling does not "obtain complete public records of New York criminal cases, or minimally certificates of disposition related to the records," Sterling must send at-the-time notices in order to comply with Section 1681k(a)(1). (Mem. at 8.)[5]

     Consistent with his view of the law – which Sterling disputes – Plaintiff <u>initially</u> explained that the purpose of such notice is to allow consumers to "correct" or dispute "incomplete and outdated adverse information" before such information is used to their detriment by potential employers. (Mem. at 8-9.) If that is the statute's purpose, then Plaintiff may have a claim. As he explained by five (5) pages of his Rule 23 brief (Mem. at 10-14), Sterling attributed records to Plaintiff based on its use of the state-mandated court record website, which matched Plaintiff's first and last name and date of birth with that contained in criminal records. Plaintiff identified additional documents in the underlying physical court files that contained middle-initial information (allegedly not available from the state website) that differed from his. Absent such resulting misattribution, Plaintiff argues that he would have obtained a temporary job – and the loss of that opportunity provides Plaintiff with injury-in-fact that confers Article III standing on him.

     In response, Sterling argued that the individualized inquiry into whether there was incomplete or outdated information in each putative class member's report (i.e., how the <u>content</u> of the reported record differed from the underlying case files) precluded findings of Rule 23(a)(2) commonality, Rule 23(a)(3) typicality and Rule 23(b)(3) predominance. (Resp. at 15-25.)[6] For example, while Plaintiff pointed to certificates of disposition as the missing information that Sterling should have gathered about him, such certificates are

---

[3] Sterling refers to (i) Plaintiff's Memorandum of Law in Support of Motion for Class Certification (ECF 34) as "Mem.," (ii) Sterling's Brief in Opposition to Plaintiff's Motion for Class Certification (ECF 44) as "Resp." and (iii) Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification (ECF 47) as "Reply."

[4] Plaintiff also seeks certification of a subclass of New York residents who did not receive a similar notice under a similar (but not identical) New York's statute.

[5] Section 1681k(a) provides that, when Sterling reports potentially adverse public records for employment purposes, it shall either (1) send notices to the subjects of the reports at the time it reports such information <u>or</u> (2) "maintain strict procedures" to ensure that reported records are "complete and up to date." 15 U.S.C. § 1681k(a).

[6] Sterling disagreed with Plaintiff's view of the governing FCRA law. However, Sterling also explained that, under either view, the key issue was the <u>content</u> of the reported records, which necessarily varied between putative class members. (Resp. at 14, 23-24.)

only created upon request and do not exist for the records attributed to each class member. (Resp. at 4.) Similarly, the differing middle initial that might have prevented misattribution of records to Plaintiff was present in only a handful, at best, of situations involving other class members. (Resp. at 6-7.) Thus, while Plaintiff could prove his own claim, he could not do so for the entire putative class. (Resp. at 17-20, 23-24.)

By his Reply, to avoid the individualized inquiry into the content of each class member's reports and the underlying records that would be fatal to his Rule 23 motion, Plaintiff reversed course. Plaintiff denied that his class claims in any way turned on the misattribution of criminal records caused by Sterling's challenged practices. (Reply at 4; accord id. at 11 ("plaintiffs are entitled to the protections of section 1681k(a)(1)'s notice requirement even absent any evidence of inaccuracy" and "accurate attribution of records is irrelevant to Plaintiff's Section 1681k(a) claims").) Instead, Plaintiff argued Rule 23(a)(2) commonality was satisfied because "the injury sustained by all class members is identical: none of the class members received any notice." (Reply at 7.)[7]

Plaintiff's failure on Reply to identify any injury other than a statutory violation is unsurprising. For example, Sterling matched records to Plaintiff based on exact matches on first and last name and date of birth. (Mem. at 12.) In the vast majority of cases, records matching on these criteria are accurately attributed to an applicant; the likelihood of two persons with the same first and last name, same date of birth and both with New York criminal records, is very low. (Resp. at 6-7.) Thus, Plaintiff offers no explanation for how lack of an at-the-time notice harms that applicant, i.e., there is nothing that Sterling should have found that would have prevented the accurate attribution of a record.

Therefore, as framed by Plaintiff, the only alleged injury or harm to the absent class members is not receiving Section 1681k(a)(1) notices. In other words, to avoid fatal Rule 23 principles, Plaintiff has decoupled his Section 1681k claim from any injury other that the deprivation of a right created by the statute itself. However, positioning his class claims in this way brings them squarely within the ambit of the pending Supreme Court decisions in Spokeo and Tyson Foods.

  **B. The issues in Spokeo and Tyson Foods bear directly on Plaintiff's class claims here.**

In Spokeo, the Ninth Circuit considered whether a plaintiff had Article III standing to prosecute alleged violations of the FCRA based solely on allegations that the plaintiff had been denied a right created by the statute, even if plaintiff suffered no resulting harm. The Ninth Circuit in Spokeo held that, because the FCRA "does not require proof of actual

---

[7] Similarly, Plaintiff argued in support of his request for Rule 23(b)(2) class-wide injunctive relief by noting that "the relevant injury" was caused by Sterling's failure to send at-the-time notices to New York residents. (Reply at 14-15.)



damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages." Id. at 413.  Accordingly, the Spokeo plaintiff could establish Article III standing by merely alleging a willful FCRA violation and did not need to allege an injury-in-fact.  Id. at 413-14.  If the Supreme Court reverses the Ninth Circuit and requires more than an alleged deprivation of a right created by the FCRA to establish Article III standing, that holding would necessarily implicate the class members' claims here.

The Supreme Court's consideration of FCRA Article III standing issues in Spokeo dovetails with the issues in Tyson Foods, and the acceptance of both petitions within six (6) weeks is not coincidental.  At issue in Tyson Foods is "Whether a class action may be certified or maintained under Rule 23(b)(3) … when the class contains hundreds of members who were not injured and have no legal right to any damages." (Question Presented, Tyson Foods, Inc. v. Bouaphakeo, No. 14-1146 (U.S. June 8, 2015, http://supremecourt.gov/qp/14-01146qp.pdf).)  The rule of law in the Second Circuit answers this question "no."  The Second Circuit has made clear that, "no class may be certified that contains members lacking Article III standing." Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2nd Cir. 2006).  Therefore, any certified class "must … be defined in such a way that anyone within it would have standing." Id. at 263-64.

Plaintiff's briefing on his pending Rule 23 motion makes clear how both Spokeo and Tyson Foods impact this case.  Plaintiff seeks to certify a class whose members' only claimed injury, i.e., only basis for Article III standing, is not receiving the Section 1681k(a)(1) at-the-time notice, i.e., deprivation of a statutory right.  As Plaintiff himself argues, the resulting harm, if any, from the class member's failure to receive the notice, is irrelevant to the class claim.  (Reply ay 11.)

However, the non-receipt of the notice Plaintiff contends is required does not, in and of itself, establish any harm.  For example, if Sterling accurately attributes a criminal record to an applicant, then there is no harm.  The applicant would have expected such a report and, indeed, may have already disclosed it in the employment application. Moreover, an employer who determines that a public record is germane to the employment application is obligated to provide notice to the applicant, see 15 U.S.C. § 1681b(b)(3), and, like here (see, e.g., Mem. at 12), would have notified the class member.  At best, the only time absent class members could potentially be harmed (i.e., suffer an injury-in-fact sufficient for standing) is if they (like the rare instance of Plaintiff) can point to some information that could have prevented the attribution of the record altogether.

If the Supreme Court overrules Spokeo, the alleged class-wide deprivation of a statutory right here will not establish Article III standing, absent allegations of some other injury.  In that case – and assuming the Supreme Court in Tyson Foods agrees with the Second Circuit rule that all class members must have standing – Plaintiff and all absent class members must also have suffered some "injury-in-fact" beyond the alleged deprivation of a statutorily-created right.  Plaintiff himself could establish his own

standing by pointing to the records misattributed to him (which also underpin his individual claims). However, each absent class member would need to do the same, either by reference to the individual content of their report or by some other proof of individual harm. If so, the need for such individualized proof would preclude class certification. (Resp. at 23-24.) Thus, the Supreme Court's decisions in both Spokeo and Tyson Foods will necessarily inform this Court's consideration of Plaintiff's Rule 23 motion.

    C.    **Courts Have Consistently Stayed FCRA Actions Based on Spokeo and Tyson Foods.**

Courts in similar cases asserting FCRA violations have routinely stayed proceedings pending the outcomes of Spokeo and Tyson Foods. See Patel v. Trans Union LLC, No. 14-cv-522-LB, ECF 184, at 3 (N.D. Cal. Sept. 3, 2015) (staying case following an order certifying classes); Salvatore v. MicroBilt Corp., No. 14-CV-1848, 2015 WL 5008856, at *3 (M.D. Penn. August 20, 2015) (staying individual claims); Miller v. Trans Union LLC, No. 3:12-cv-1715, ECF 119, at 6 (M.D. Pa. Aug. 3, 2015) (staying case prior to ruling on class certification); Stone v. Sterling Infosystem, Inc., No. 2:15-cv-00711-MCE-DAD, 2015 WL 4602968, at *3 (E.D. Cal. July 29, 2015) (staying case prior to ruling on class certification); Hillson v. Kelly Servs., Inc., No. 2:15-CV-10803, 2015 WL 4488493, at *1 (E.D. Mich. July 15, 2015) (staying individual claims); Larson v. Trans Union LLC, No. 3:12-cv-05726 WHO, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015) (staying case and conditionally certifying class in same order); Ramirez v. Trans Union LLC, No. 12-cv-00632-JSC, ECF 184 at 3 (N.D. Cal. June 22, 2015) (staying case post-class certification).[8] These courts readily recognized that the potential impact of the Spokeo and Tyson Foods decisions made proceeding with litigation wasteful and potentially inequitable.

For example, in Ramirez, the court certified a FCRA class claim based solely on a statutory violation because, under Spokeo, "a FCRA 'cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages.'" No. 12-cv-00632-JSC, ECF 184, at 1-2 (quoting Ramirez, 301 F.R.D. 408, 42 (N.D. Cal. 2014). "Given that the Supreme Court's decision in Spokeo may directly impact the Court's class certification ruling," i.e., require it to reconsider the propriety of Rule 23 certification of the law changes, the Court determined a stay was appropriate. Id.

---

[8] Two courts denied motions to stay immediately after the Supreme Court granted certiorari in Spokeo, but before it granted certiorari in Tyson Foods. See Speer v. Whole Foods Market Grp., Inc., No. 8:14-cv-3035, ECF 46 (M.D. Fla. Apr. 29, 2015); Dreher v. Experian Info. Solutions, Inc., No. 3:11-cv-624, ECF 344 (E.D. Va. Apr. 30, 2015). In Speer, the court entered a two-paragraph order that lacked any meaningful analysis, and in Dreher, the court simply wrote "Denied" across the bottom of the motion to stay. See id. Later decisions, which have fully considered the possible impact of the rulings on the pending appeals, have consistently granted stays.

Hon. Valerie E. Caproni
September 18, 2015
Page 7

ReedSmith

     The Larson court agreed with Ramirez and, importantly, recognized that Spokeo would also determine the standing of absent class members, which necessarily implicated Tyson Foods. 2015 WL 3945052, at *8. The court explained:

> Even if [Plaintiff] himself could make a sufficient showing of actual harm to satisfy Article III, the record indicates that a signification portion of the putative class would not be able to do the same. A decision in Spokeo reversing the Ninth Circuit would thus raise serious questions regarding [Plaintiff's] ability to establish his own individual standing, as well as the predominance and superiority requirements necessary to certify and maintain a class action under Rule 23(b)(3).

Id. Therefore, the court concluded that "[a] decision in Spokeo reversing the Ninth Circuit would bring [the] issue from the Tyson appeal to the forefront of the class certification determination here, further counseling for issuance of a stay." Id. After staying the case, the Court conditionally certified the class based on existing law, recognizing (as did the Ramirez Court) that if the Ninth Circuit is reversed in Spokeo, and actual harm is required to assert FCRA claims, then class certification would be inappropriate because individual issues would predominate. See id. at *13.

     Most recently, the Patel court (over the objections of Plaintiff's counsel here) granted the requested stay because "the issue of whether a plaintiff has Article III standing by alleging a willful violation of 15 U.S.C. § 1681n(a) without suffering actual damages" "hovers in the background of all statutory damages cases." Patel, No. 14-cv-522-LB, ECF 184, at p. 3. Moreover, the Patel court agreed that a stay was appropriate for the reasons stated in Larson and Ramirez (two other cases in which Plaintiff's counsel here opposed the motions to stay). Id.[9]

     Sterling respectfully requests that this Court follow the majority rule established by recent case law and stay this case pending the rulings in Spokeo and Tyson Foods.

---

[9] Similarly, numerous other courts have stayed cases asserting claims under other federal statutes that, like the FCRA, allow for the recovery of statutory damages without proof of harm/actual damages. See, e.g., Provo v. Rady, No. 15-cv-0081(BGS), ECF 31 at 4 (S.D. Cal. July 29, 2015) (Fair Debt Collection Practices Act); Boise v. ACE USA, Inc., No. 15-Civ-21264, 2015 WL 4077433, at *7 (S.D. Fla. July 6, 2015) (Telephone Consumer Protection Act); Williams v. Elephant Ins. Co., No. 1:15-cv-00119-GBL-TCB, 2015 WL 3631691, at *1 (E.D. Va. May 27, 2015) (same).



### III. ARGUMENT

#### A. Legal Standard

This Court has the inherent authority to stay this case pending the outcome of appeals pending before the Supreme Court. See Landis v. North Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants."). A stay is appropriate when the Supreme Court is close to settling an important issue of law bearing on the action. See Marshel v. AFW Fabric Corp., 552 F.2d 471, 472 (2d Cir. 1977) (per curiam) (instructing district court to stay proceedings pending Supreme Court decision likely to determine question of liability); see also In re Literary Works in Elec. Databases Copyright Litig., Nos. M-21-90 (GBD), MDL, 00-CIV-6049, 00-CIV-7376, 00-CIV-9411, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) (same). Even if the issue is not controlling, a stay is proper where it is efficient for a trial court's docket and the fairest course for the parties. See Goldstein v. Time Warnter N.Y.C. Cable Grp., 3 F. Supp. 2d 423, 439 (S.D.N.Y. 1998) (citation omitted).

Whether to grant a motion to stay is "firmly within a district court's discretion." LaSala v. Needhman & Co., Inc., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). This Court's decision to grant a stay will not be disturbed absent an abuse of discretion. See WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 76 (2d Cir. 1997). In exercising its discretion, however, a court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254-55. To do so, courts in the Second Circuit examine and balance the following five factors: (1) the private interests of the plaintiff in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff if delayed; (2) the private interests of and burden on the defendant; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. See Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (articulating factors and staying case pending decision of out-of-circuit district court). In short, when balancing the "Kappel" factors, "the basic goal is to avoid prejudice." Id.

#### B. This Court Should Stay this Case.

The balance of the Kappel factors compels a stay of all proceedings in this action pending the Supreme Court's imminent decisions in Spokeo and Tyson Foods. As the court recognized in Nuccio v. Duve, "[p]ermitting this action to proceed while judicial resources elsewhere are already devoted to determining the exact legal questions at issue here would be an inefficient use of judicial time and resources." No. 13-cv-1556 (MAD/TWD), 2015 WL 1189617, at *5 (S.D.N.Y. Mar. 16, 2015). Following this same logic and applying the five Kappel factors, courts in the Second Circuit have consistently held that similar circumstances warranted a stay of proceedings. See Schapp v. MasTec Servs.

Hon. Valerie E. Caproni
September 18, 2015
Page 9

ReedSmith

Co., Inc., No. 12-CV-0841, 2013 WL 1296404, at *6 (N.D.N.Y. Mar. 28, 2013) (granting stay of proceedings pending Supreme Court decision bearing on legal issues in case); In re Literary Works, 2001 WL 204212, at *3 (same); see also Estate of Heiser v. Deutsche Bank Trust Co. Ams., No. 11 Civ. 1608 AJN MHD, 2012 WL 2865485, at *5-6 (S.D.N.Y. July 10, 2012) (granting stay of proceedings pending Second Circuit decisions in consolidated appeals that presented questions of law substantially related to case). Accordingly, before any order certifying a class under Rule 23 here, this Court should stay the case. (If the Court decides to deny class certification, then no stay would be necessary.)

    **1.    Plaintiff and the putative class members will not be prejudiced by a limited stay.**

A stay will not impact Plaintiff's damages claims. In addition to his class claims, Plaintiff asserts individual claims against Sterling for the inaccurate attribution of records to him, and the subsequent handling of his disputes, that allegedly cost him a job. (See Compl., ECF 1, ¶¶ 75-93.) However, Plaintiff only seeks lost-wages damages for a six-week, part-time job in the summer of 2012. (See Jones Dep. at 16:19-17:6, Jones v. Halstead Management Company, LLC et al., Case No. 1:14-cv-3125-VEC, ECF 94, at 20 (S.D.N.Y.).) Thus, his claimed damages stopped accruing years ago. Moreover, Sterling's changed procedures for attributing records ensure that, even should he apply for another job, the records misattributed to him years ago would not be included on any current or future reports. (See Resp. at 6.)

Similarly, the putative class members' interests will not suffer prejudice by a limited stay. Both the Spokeo and Tyson Foods decisions are expected from the Supreme Court no later than June 2016, well within reasonable length for a stay. See Estate of Heiser, 2012 WL 2865485, at *4 (granting stay pending Second Circuit decision – over plaintiffs' objections of prejudice – even though appellate briefing not completed); In re Literary Works, 2001 WL 204212 at *3 ("[A] stay of several months will cause no prejudice or hardship to … Plaintiffs."); Larson, 2015 WL 3945052, at *8 (rejecting argument that one-year stay was prejudicial).

Moroever, staying the case pending decisions in Spokeo and Tyson Foods prevents unnecessarily confusing absent class members. If the Court denies Sterling's motion to stay and grants Plaintiff's motion for class certification, Plaintiff must prepare and send out notice to the absent class members "promptly" and "as soon as practicable" after the certification order is issued. MANUAL FOR COMPLEX LITIGATION § 21.311; NEWBERG ON CLASS ACTIONS § 8:11. If this notice is sent, and the Supreme Court later rules that the absent class members lack standing (Spokeo) and that the proposed class cannot be certified (Tyson Foods), then the Court's Rule 23 ruling may need to be reconsidered. Plaintiff will then need to send a second notice explaining that some or all of the absent class members no longer have a claim. This will cause unnecessary confusion to putative class members.

ReedSmith

In addition, since Plaintiff seeks only statutory damages of $100 - $1,000 for the class, any potential recovery would be unaltered by a stay of proceedings. See Flo & Eddie, Inc. v. Sirius XM Radio Inc., No. 13 Civ. 5784 (CM), 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015) (ability to obtain monetary damages undermines claimed prejudice and plaintiff "loses not a dime's worth of potential damages by holding up until the legal issue is resolved"); Stone v. Sterling Infosystems, Inc., No. 2:15-cv-00711-MCE-DAD, 2015 WL 4602968, at *2 (E.D. Cal. July 29, 2015) (absent actual harm, "the risk of prejudice from delaying a decision on this case for one year is low"). In the event that Plaintiff – yet again – changes course and argues the class claims are based on actual harm (i.e., misattribution of records), Sterling has identified only seven putative class members who had records misattributed to them. (See Resp. at 6.) Further, any threat of future misattribution to these individuals is remote as Sterling's procedures for attributing criminal records have changed throughout the class period, and such misattribution of records would not have occurred under Sterling's current procedures. (See id.)

2. **Proceeding with merits discovery while the claims remain unsettled makes little sense.**

Recognizing the need to understand the claims at issue to properly frame discovery and prepare for trial, the parties and this Court initially bifurcated discovery in this suit. Under the agreed-upon schedule, the contours and timing of merits discovery, dispositive motions and trial will only be established after the Court determines which (if any) of Plaintiff's claims would proceed on a class-wide basis. Thus, before proceeding to merits discovery, the parties will know which claims will be class claims and which will be individual. Armed with this knowledge, the parties can then determine the appropriate time and resources to devote to the remaining discovery efforts. Given the impending decisions in Spokeo and Tyson Foods, and after already agreeing to bifurcate discovery, it makes no sense to begin merits discovery now when any decision to certify one or more classes might be subject to reconsideration while discovery is still ongoing and before any trial begins.

Moreover, Plaintiff seeks the exact same damages for all of his claims – both individual and class. Thus, while the only class claims are under Section 1681k (and the New York analogue), it is not feasible – as Plaintiff's counsel have suggested when opposing other stays – to simply proceed on non-class merits discovery while waiting for decisions in Spokeo and Tyson Foods before starting class-wide merits discovery. In any event, such a proposal would still confuse class members because, absent a stay, they would need to receive notice whether or not discovery on the class claims begins.

3. **Judicial economy supports a stay.**

The interests of judicial economy also weigh strongly in favor of a stay. By granting certiorari in Spokeo and Tyson Foods within a six-week span earlier this year, the



Supreme Court has signaled its intent to resolve legal questions central to the propriety of the class's claims in this action. Therefore, this Court need not devote its resources to issuing a decision on Plaintiff's motion for class certification, and any subsequent proceedings, when a controlling legal issue will soon be decided by the Supreme Court. See Nuccio, 2015 WL 1189617, at *5 (under Kappel, devoting multiple judicial resources to exact same legal question would be inefficient use of judicial time and resources); Estate of Heiser, 2012 WL 2865485, at *5 ("'[W]hen a similar action is pending in another court' and 'where a higher court is close to settling an issue of law bearing on the action' a stay is proper.") (citation omitted); In re Literary Works, 2001 WL 204212 at *3 ("Proceeding with this litigation several months before the Supreme Court more precisely defines the claims at issue would be unnecessarily wasteful of both the Court's and the litigants' resources.").

Notably, several courts have expressly cited judicial-economy concerns when granting motions to stay in putative FCRA class-action lawsuits based on Spokeo and Tyson Foods. See Salvatore, 2015 WL 5008856, at *2 ("[A] stay is more likely to promote a more orderly course of justice, and judicial economy, by allowing the court and the parties to await the Supreme Court's guidance before proceeding further, as other courts have found in similar circumstances."); Hillson, 2015 WL 4488493, at *1 ("[J]udicial economy favors a limited delay in awaiting the Spokeo decision."); Stone, 2015 WL 4602968 (discovery disputes and class certification issues likely to be before court "would be an unnecessary use of judicial resources"). Overall, the Kappel factors strongly militate in favor of staying this case.

## IV. CONCLUSION

For all of these reasons, Sterling respectfully requests that this Court stay this case pending the Supreme Court's decisions in Spokeo and Tyson Foods.

Sincerely,

/s/ Michael O'Neil

Michael O'Neil (*Pro Hac Vice*)